UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOCAL 67, OPERATIVE PLASTERERS
AND CEMENT MASONS INTERNATIONAL
ASSOCIATION, AFL-CIO,

        Plaintiff,

        CASE NO. 04-73022

v.

        PAUL D. BORMAN

GEM MANAGEMENT COMPANY, INC.,    UNITED STATES DISTRICT JUDGE

        Defendant.
_____/

## OPINION AND ORDER GRANTING PLAINTIFF LOCAL 67'S MOTION FOR SUMMARY JUDGMENT (DOCK. NO. 55)

Now before the Court is Plaintiff Local 67's Motion for Summary Judgment (Dock. No. 55). The Court held a motion hearing on May 24, 2007. Having considered the entire record, and for the reasons that follow, the Court GRANTS Plaintiff's Motion for Summary Judgment.

**I. FACTS**

Defendant Gem Management Company, Inc. ("GEM" or "Defendant") is a Michigan corporation engaged in the business of synthetic-plaster installation throughout Michigan. (Compl. ¶ 4). Plaintiff Operative Plasterers and Cement Masons International Association, AFL-CIO ("Local 67" or "Plaintiff") is a labor organization which represents employees in the construction industry. (Compl. ¶ 3).

On February 9, 1999, GEM entered into a collective bargaining agreement with a different union, Bricklayers & Allied Craftworkers Local 9, AFL-CIO ("Bricklayers 9"). *Local 67 v. GEM*, No. 04-73022, 2006 WL 314343, *1 (E.D. Mich. Jan 09, 2006) (unpublished). The

1

Bricklayers collective bargaining agreement "designates Bricklayers 9's work jurisdiction as the entire State of Michigan, with the exception of Wayne, Oakland, Macomb, and Monroe counties." *Id*.

On October 2, 1999, GEM entered into a multi-employer collective bargaining agreement (hereinafter "CBA") with Plaintiff Local 67. (Compl. ¶ 5). As the Court stated in a prior opinion on the matter:

> The CBA identified Local 67's work jurisdiction as Wayne, Macomb, Oakland, and Monroe counties south of 13 Mile Road in Michigan. This CBA was a "me too" agreement binding GEM to a 1997-2000 CBA between Local 67 and the Detroit Association of Wall and Ceiling Contractors later known as the Architectural Contractors Trade Association (ACT) (the "1997 ACT agreement"). Local 67 claims that GEM thereafter became bound by a 2000-2003 successor agreement to Local 67's 1997 ACT agreement (the "2000 ACT agreement"). This 2000 ACT agreement expand[ed] Local 67's work jurisdiction to include all of Wayne, Oakland, Macomb, Lapeer, and St. Clair Counties in Michigan. Thus, the work jurisdictions for doing GEM's synthetic plaster installation work in Bricklayers 9's and Local 67's CBAs *overlapped* as to Lapeer and St. Clair counties in Michigan. . . . Both Bricklayers 9's and Local 67's CBAs required GEM to pay wage and fringe-benefit contributions to each union's fringe benefit funds based upon employee work hours and to provide fringe benefits to employees. Thus, depending upon the jurisdiction in which it worked, GEM was to make the requisite fringe-benefit contributions to Bricklayers 9 or to Local 67, and in Lapeer and St. Clair Counties both unions claim fringe-benefit contributions. Over the years in dispute, GEM paid contributions for work done in these two counties to Bricklayers 9's fringe-benefit funds. . . .
> On October 21, 2001, Local 67 filed an action against GEM before the National Labor Relations Board ("NLRB"), alleging that GEM committed an unfair labor practice in violation of the National Labor Relations Act ("the NLRA"), 29 U.S.C. § 151, et seq., when it failed to pay wages and fringe-benefit contributions under Local 67's CBA. After conducting a hearing on this claim, the NLRB's Administrative Law Judge Eric M. Fine ("ALJ") found that GEM was bound to Local 67's 1997 ACT agreement and its successor 2000 ACT agreement[,] and had failed to pay wages and fringe benefits in compliance with that CBA as to work performed within Lapeer County. This decision was upheld by the NLRB, *GEM Management Co and Local 67*, 339 N.L.R.B. 489, 339 N.L.R.B. No. 71 (2003), and the Sixth Circuit Court of Appeals. *N.L.R.B. v. Gem Management Co.*, 107 Fed.Appx. 576 (6th Cir. 2004) [(unpublished)]. [The Sixth Circuit,] in its August 19, 2004 order[,] enjoined GEM from "[w]ithdrawing recognition from Local 67, Operative Plasterers' and Cement Masons' International Association, AFL-CIO

> (Local 67) during the term of the collective-bargaining agreement between Local 67 and Architectural Contractors Association (ACT), with effective dates of June 1, 2000, through May 31, 2003, and ordered payment of fringe-benefits and union dues to Plasterer 67 and its fringe-benefit funds for employees doing work in the jurisdiction. *Id*. at 579.
>
> . . . .
>
> Under Article V of Local 67's CBA, grievances between the employees and GEM are to be submitted to "final and binding" arbitration before the Joint Grievance Board ("JGB"). On May 4, 2004, Local 67 filed a grievance before the JGB against GEM, alleging that GEM violated Local 67's CBA, [essentially a breach of contract claim,] by failing to pay certain back wages and fringe benefits and damages under that CBA. After holding a hearing on the grievance [], in which GEM did not participate, the JGB determined, [on May 27, 2004], that GEM had violated Local 67's CBA, and ordered GEM to remit to Local 67 $342,324.98 for $208,973.19 in unpaid back wages, $117,071.55 in unpaid fringe benefits, and $5,853.38 in liquidated damages and $10,448.66 in interest.
>
> GEM [claimed] that it declined to participate because (1) Local 67 had already pursued an almost identical claim before the NLRB and (2) Local 67 no longer had any work jurisdiction at the GEM work sites because the Local 67's CBA ended on March 7, 2003. Thus no wages and fringe-benefit contributions could be due after this date. GEM did not, however, assert these jurisdictional defenses before the JGB nor seek to have Bricklayers 9 joined as a party to those proceedings. Nor [] did it attempt to join Bricklayers 9 in the NLRB proceeding under 10(k). On June 2, 2004, the JGB sent a letter to GEM's owner and president, George Moore, demanding payment in compliance with its order no later than July 2, 2004. GEM did not comply with the JGB's June 2, 2004, request, and has yet to pay the ordered award.

*Local 67*, 2006 WL 314343 at *1-2.

On August 6, 2004, Plaintiff Local 67 filed a one-count Complaint in this Court against GEM seeking to enforce the JGB decision. GEM immediately filed a Motion to Dismiss for Failure to Join a Necessary Party (the necessary party being Bricklayers 9). This Court denied GEM's motion on April 12, 2005, finding that GEM's CBA with Local 67 was separate and distinct from Defendant GEM's CBA with Bricklayers 9. Thus, this Court concluded that Bricklayers 9 was not an indispensable party. (Dock. No. 11).

On May 13, 2005, GEM filed a Third-Party complaint against Bricklayers 9. (Dock. No.

3

13). GEM alleged that (1) both labor organizations' CBAs assert jurisdiction over the synthetic plaster installation work performed in Lapeer and St. Clair counties, where GEM is located; and (2) that if GEM is required to pay the contested pension contributions to Local 67, then Bricklayers 9 should refund the money GEM paid Bricklayers 9 toward its pension fund, because only one labor organization can be entitled to collect pension contributions for the work that was done. On June 22, 2005, Bricklayers 9 filed a Motion to Dismiss. (Dock. No. 16). The motion was referred to Magistrate Judge Pepe, who issued a Report and Recommendation which recommended that Court grant Bricklayers 9's Motion to Dismiss. (Dock. No. 74). The Court adopted the Magistrate Judge's Report and Recommendation on March 8, 2006. (Dock. No. 84). GEM's Motion for Reconsideration was denied on June 27, 2006. (Dock. No. 86).

Local 67 filed the instant Motion for Summary Judgment on October 17, 2005. A Response brief was filed on May 14, 2007.

## II. ANALYSIS

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and

> identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd.*

of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "'[C]onclusory' allegations unsupported by 'specific' evidence will be insufficient to establish a genuine issue of fact." *Id.* (citations omitted). *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 902 (1990).

"[T]he showing (whether as to standing or the merits) required to overcome a motion for summary judgment is more extensive than that required in the context of a motion to dismiss." *Id*. "The principal difference is that in the former context evidence is required, while in the latter setting the litigant may rest upon the allegations of his complaint." *Id.* (citations omitted); *see* FED. R. CIV. P. 56(e) (requiring the "nonmoving party to go beyond the pleadings.").

**B.     Discussion**

In the instant motion, Plaintiff Local 67 argues that Defendant GEM is in no position to dispute the JGB award because it did not attend the JGB hearing. Local 67 asserts that, therefore, the award is enforceable.

    1.  Is the JGB Hearing Considered "Arbitration"

GEM first responds that regardless of whether it attended the JGB hearing, the arbitration award is not enforceable because the grievance before the JGB was barred by the CBA. GEM proffers that under the CBA, wages and fringe benefits are exempted from the arbitration procedure. GEM contends that it cannot be required to submit to an arbitration to which it never agreed to so submit.

It is Local 67's position that there is a three-step grievance procedure, the JGB being the second step, and arbitration as the third. Local 67 believes that while the CBA does not allow

6

the parties to "arbitrate" issues of wage payments and fringe benefits contributions, there is no limitation on "JGB hearings."

Article V of the CBA states, in pertinent part:

It is mutually agreed that all controversies and disagreements between Contractors and employees, the Union and its members, including differences as to interpretation of the terms of their Agreement, shall be settled in accordance with the procedure herein provided, and *that there shall at no time be any strikes, tie-ups of equipment, slowdown, walkouts, or any cessation of work on the part of the employees of any kind, pursuant to any order or direction of the Union.*

Provided, however, that *the no strike provision of the above paragraph shall not have any force and effect as to matters in violation of Article II, Sections 3 and 5*, pertaining to wages, vacation and fringe benefits, or the Working Standards and Rule pertaining to job safety.

The violation of the payment of wages, overtime pay, rates of pay, vacation pay, fringe benefit contributions . . . , as provided for in this Agreement, shall not be subject to arbitration. Not withstanding any other provision of this Agreement, the Union may take such economic action or other lawful action against the Employer because of the Employer's failure to make the required payments, payments in the correct amount or allow the audit. . . .

The following procedure should be followed relating to grievances:

A. It is mutually agreed that both employee and contractors shall have the right and shall make every effort to adjust directly any and all grievances which may arise. If such grievances are not satisfactorily adjusted by the contractor, the employee shall report in writing to the Union, setting for facts constituting the grievances, whereupon the Union shall present such complaint to the Contractor, and every effort shall me made to settle the same.
B. If any grievances or disagreements are not satisfactorily settled by the Employer and the employee, the Union Steward or Union Representative, or either the Union, on behalf of the employee, or the Employer, shall submit the grievance in writing to the Joint Grievance Board as hereinafter set forth.
C. Joint Grievance Board [JGB]– If the grievance of disagreement is not satisfactorily settled as above provided, the same may be brought before the [JGB] within thirty (30) days from the time that such grievance is brought to the attention of the Union or the Employer. Failure on the part of either the Union or the Employer to act on any such grievance within thirty (30) days shall constitute a waiver of such grievance.

7

. . . .
                (5)     The decision of the [JGB] shall be reached by a majority vote and
                        such decision shall be final and binding on all parties.
        D.      Arbitration:
                (1)     In the event the [JGB] does not arrive at a decision or should the vote
                        of the Board be tied, and no decision arrived at by reason thereof,
                        then said matter shall be submitted to an impartial arbitrary and said
                        arbitrator's decision shall be final and binding upon all parties.

(Compl. Ex. C, CBA Article V) (emphasis added).

Defendant GEM's argument is premised on the misconception that the JGB hearing is considered arbitration. In the CBA's "arbitration and grievance procedure," the JGB is a separate and distinct step. Therefore, the JGB and arbitration are not synonymous. The JGB, per the CBA, consists of three members representing the Employer and three members representing the Union. (*Id.*) It takes a majority of these votes to make a decision by the JGB final and binding. (*Id.*). Arbitration, as set forth in the CBA, is an single impartial arbitrator, who may be appointed by the JGB by majority vote, or by the American Arbitration Association, if the JGB fails to have a majority agree. (*Id.*). As such, this Court cannot reasonably find that the JGB and arbitration are both "arbitration" for purposes of the clause at issue in the CBA. Further, GEM has not proffered evidence that the JGB is "arbitration." Accordingly, even in a light most favorable to the non-moving party, the Court finds that JGB is not "arbitration" for purposes of the CBA, but a joint employer-union grievance panel.

        2.        Whether the Grievance was Timely Filed

Next, GEM argues that the grievance in this matter was not timely filed and therefore could not be reviewed by the JGB. In support of its assertion, GEM submits that the grievance was not brought before the JGB within thirty days from the time that the grievance was brought to the attention of Local 67. GEM points out that (1) the CBA was terminated almost a year

prior to the filing of the grievance; (2) the ALJ issued his decision nineteen months prior; and (3) thirty months have passed since Local 67 first became aware of the potential claim.

Local 67 asserts that the grievance was timely filed. The collective bargaining agreement requires that disagreements "may be brought before the [JGB] within thirty (30) days from the time that such grievance is brought to the attention of the Union or the Employer. Failure on the part of either the Union or the Employer to act on any such grievance within thirty (30) days shall constitute a waiver of such grievance." (Compl. Ex. C, Article V).

The Court finds that the grievance was not timely filed. Local 67 filed its unfair labor action against GEM, before the NLRB, on October 21, 2001. Local 67 knew, at that time, of GEM's failure to pay wages and fringe benefit contributions, and could have filed a grievance with the JGB concurrently. Local 67 did not file their grievance with the JGB until May 4, 2004, three and a half years later.

Local 67 makes two arguments. First, Local 67 argues that GEM did not timely file a complaint to vacate the JGB's May 17, 2004 award. Local 67 proffers that a timely action to vacate an award may not be raised as a defense in an action to confirm the award after the limitations period for an action to vacate has expired. Local 67 relies on the Sixth Circuit opinion in *Occidental Chemical Corp. v. International Chemical Workers Union*, 853 F.2d 1310 (6th Cir. 1988) and the District Court opinion in *IBEW Local No. 573 v. Steen Electric, Inc*, 232 F.Supp.2d 797 (N.D. Ohio 2002).

Both *Occidental* and *Local 573* dealt with issues of arbitration and statutes of limitations for filing a motion to vacate the arbitration award – dissimilar to the case at bar. Here, the JGB was not "arbitration," but a step in the grievance procedure which leads to arbitration.

9

Second, Local 67 argues that GEM cannot refuse to attend the JGB and then subsequently attack the award in federal court. GEM responds that the waiver of the right to strike by Local 67 during the time of the agreement is the *quid pro quo* for GEM's acceptance of the grievance and arbitration procedure. GEM submits that since Local 67 did not waive the right to strike for wage and fringe benefit issues, there is no *quid pro quo*. With *no quid pro quo*, GEM believes that the grievance and arbitration procedures do apply to it on those issues.

"Any agreement to submit disputes to a grievance procedures is a standard *quid pro quo* for agreeing not to strike, and is a well established and favored way to resolve labor disputes. *Teamsters Freight Employees Local Union No. 480 v. Bowling Green Express, Inc.*, 717 F.2d 254, 257 (6th Cir. 1983). Indeed, the CBA here states:

> It is mutually agreed that all controversies and disagreements between Contractors and employees, the Union and its members, including differences as to interpretation of the terms of their Agreement, shall be settled in accordance with the procedure herein provided, and *that there shall at no time be any strikes, tie-ups of equipment, slowdown, walkouts, or any cessation of work on the part of the employees of any kind, pursuant to any order or direction of the Union.*
>
> Provided, however, that *the no strike provision of the above paragraph shall not have any force and effect as to matters in violation of Article II, Sections 3 and 5*, pertaining to wages, vacation and fringe benefits, or the Working Standards and Rule pertaining to job safety.
>
> The violation of the payment of wages, overtime pay, rates of pay, vacation pay, fringe benefit contributions . . . , as provided for in this Agreement, shall not be subject to arbitration. Not withstanding any other provision of this Agreement, the Union may take such economic action or other lawful action against the Employer because of the Employer's failure to make the required payments, payments in the correct amount or allow the audit

(Compl. Ex. C, CBA Article V) (emphasis added).

However, the Court notes that even though the CBA states that the Union and its members can strike on wage and fringe benefit issues, it also states that if those issues are

10

submitted to the grievance process, these issues cannot be taken to arbitration. Thus, even in a light most favorable to GEM, the non-moving party, because the Union and its members cannot take grievance procedures to arbitration, that is *quid pro quo* for GEM signing the CBA and agreeing to the grievance procedures.

GEM's next argument is that it did not refuse to attend the JGB hearing, but could not make the hearing as scheduled. According to GEM, when it asked for the hearing to be rescheduled, it was informed that postponements are not allowed by the CBA. However, the record shows otherwise. GEM received a letter around May 14, 2004, from Donna Pardonnet, the Executive Director of the ACT. GEM's principal, George Moore, contacted Pardonnet to let her know that the hearing was too soon, and asked if it was possible to postpone or reschedule because he could not make it. (Def.'s Resp. Ex. A, Moore Dep. 22-23). However, Moore does not remember his conflict on that date; and GEM has no records related to his schedule during May of 2004. (*Id*. at 23-24). Further, Moore does not remember what Pardonnet said in response to his request to reschedule. (*Id*. at 24-25). More to the point, Moore testified that he left it to his then-attorney Weiss to cancel the hearing. Weiss neglected to do so. The transcript of Moore's deposition states:

> Q: Did you[, George Moore,] contact an attorney after this conversation with Ms. Pardonnet specifically related to the May 27, 2004 hearing?
> . . . .
> A: Yes
> Q: Who did you contact?
> A: Mr. Weiss.
> Q: Why did you contact him?
> A: To see if he could take my place.
> Q: Could he?
> A: No.
> Q: After Mr. Weiss informed you that he was not available to represent you on May 27, 204, what did you do as it relates to that hearing?

| | | |
|---|---|---|
| A: | I did nothing. *Mr. Weiss said he was going to call and cancel it.* | |
| Q: | Do you know if he did that? | |
| A: | No, I do not. | |
| Q: | Do you recall any further conversations with Mr. Weiss after your initial discussion with Ms. Pardonnet to see if he, in fact, was able to adjourn or cancel the Joint Grievance Board meeting? | |
| A: | I don't remember. | |
| Q: | Do you recall ever contacting Mr. Weiss again after your initial request to see if he could cover for you? | |
| A: | I don't remember. | |

. . . .

| | |
|---|---|
| Q: | Did you ever learn at any point, as your attorney suggesting this case, that Mr. Weiss advised a Joint Grievance Board that he was unavailable? |
| A: | I don't know. |

. . . .

| | |
|---|---|
| Q: | After the conversation you had with Ms. Pardonnet, did you ever contact her directly to see what had happened on May 27, 2004? |
| A: | I don't remember. |

. . . .

| | |
|---|---|
| Q: | Can you explain to the Court why it was that GEM Management did not appear? |
| A: | No. |

(Def.'s Resp. Ex. A, Moore Dep. 25-28) (emphasis added).

The Court does not find GEM's argument convincing. Moore has cannot remember why he could not make the JGB hearing date and he does not know if Weiss told the JGB he was unavailable. He acknowledges that he left it to Weiss to cancel the hearing. Similarly, the record is void of any evidence showing that Weiss attempted to inform Pardonnet that he was unavailable or that he attempted to reschedule the hearing. Further, Moore has no idea why GEM did not appear at the hearing. Accordingly, even in a light most favorable to the non-moving party, the Court finds that wage and fringe benefit issues are properly before this Court.

    3.    Waiver Due to GEM's Failure to Appear

As a result of the Court's finding Local 67 could raise wage and fringe benefit issues in front of the JGB, and that GEM had to appear in front of the JGB, then the issue remains whether

GEM waived the arguments by its failure to appear at the hearing. In *Bowling Green*, the Court held that "final and binding decisions made by joint employer-union grievance panels, like the one in the instant case, must be enforced under § 301 of the Labor Management Relations Act of 1947. These decisions are entitled to the same deference as that given to the decisions of an arbitrator under national labor law." 717 F.2d at 256. The collective bargaining agreement in *Bowling Green* stated that if grievances are not resolved at a local level, then they were to be submitted to a multi-state grievance panel. *Id*. at 256. The agreement stated that the refusal of either party to submit to the grievance procedure at any stage withdraws the benefits of the decision being final and binding. *Id*. The plaintiff argued on appeal that the district court erred in its interpretation of the agreement when it found that a party to the agreement could decide whether or not to submit to the grievance procedure, depending on whether or not it felt submitting would be advantageous. *Id*. If either party refused to submit, then each was free to pursue whatever other remedy it so wished, including a strike by the union. *Id*. The Sixth Circuit disagreed with the district court and found that "the interpretation adopted by the district court would . . . punish parties who submit grievances [] and reward those who refused to appear[, which] is totally contrary to national labor policy favoring the peaceful resolution of labor disputes, and contrary to basic contract law." *Id*. at 256-57.

Although the provisions of the collective bargaining agreement in *Bowling Green* are different than the instant case,[1] the court's holding is on point. GEM was a party to the CBA.

---

[1] The collective bargaining agreement in *Bowling Green* stated that if grievances are not resolved at a local level, then they are submitted to a multi-state grievance panel. *Id*. at 256. The agreement stated that the refusal of either party to submit to the grievance procedure at any stage withdraw the benefits of the decision being final and binding. *Id*.

As a party to the CBA, the Grievance Procedure applied to them. Since the issues were properly before the JGB, GEM could not unilaterally decide not to attend the hearing for any reason. As the Court has found above, GEM's reasoning for failing to attend the JGB hearing is unconvincing. The evidence submitted by GEM does not show a reason why both Moore and Weiss could not making the hearing, nor does the evidence show that Weiss informed the JGB of his unavailability or an attempt to reschedule. Therefore, to allow GEM to question the JGB's award in front of this Court, when it failed to show up before the JGB whose authority it questions, would punish Local 67, who submitted and followed the proper grievance steps, and reward GEM who did not appear. "A party cannot urge, as a defense to a suit on the contract, his own non-compliance with its provision." *Id*. at 257. Accordingly, the Court holds that in a light most favorable to the non-moving party, GEM waived its right to argue that the grievance was not timely filed when it failed to appear.

        4.        The Potential Bias of the JGB

Since the Court found above that GEM waived its timeliness argument, the Court finds that it also waived its bias argument by failing to appear in front of the JGB. The Court notes that the JGB contained three members from each side of the matter. According to the CBA, Local 67 selects the three members representing the union, and the Architectural Contractors Trade Association select the three members representing the employer. (Compl. Ex. C, CBA). This selection process was confirmed by Rauch in his deposition. (Pl.'s Reply, Ex. D, Rauch Dep. 10). While GEM believes that the panel was biased, there is no evidence of bias put forth. Indeed, one week before this hearing, GEM attended and won a grievance hearing.

        5.        Doctrine of Election of Remedies/Collateral Estoppel and Concurrent Jurisdiction

GEM also claims that the issues Local 67 raises are barred by the doctrine of election of remedies and collateral estoppel because the NLRB has already determined the extent of GEM's contractual liability. GEM believes that the ALJ found that it had not complied with the terms of the CBA, had committed an unfair labor practice, was required to honor the CBA. GEM avers that the JGB award should be vacated because it concerns the overlapping jurisdictional claims of competing unions, which would foster labor unrest and cause continued conflict with a competing union.

Local 67 responds that the doctrines of election of remedies and collateral estoppel do not affect its Complaint to enforce the JGB's award. Again, Local 67 argues that GEM did not raise the above issues at the JGB hearing, or in a motion to vacate the award, and therefore has waived them.

The Court finds that GEM also waived this argument by failing to appear before the JGB. However, even if it had not waive this issue, GEM's argument is not convincing.

The Sixth Circuit has found that conduct which constitutes "both an unfair labor practice and a breach of contract justified the district court's assumption, under Section 301, of concurrent jurisdiction with the NLRB." *Int'l Brotherhood of Boilermakers v. Transue & Williams*, 879 F.2d 1388, 1395-96 (6th Cir. 1989). In this case, the NLRB dealt with the issue of an unfair labor practice by GEM. After a hearing, the ALJ ruled in favor of Local 67, and his decision was affirmed by the NLRB and the Sixth Circuit. The issue before this Court is a Complaint to enforce an JGB award under § 301 of the Labor Management Relations Act, pursuant to a CBA's grievance process, as a result of a breach of contract. The Court finds that this issue is properly before the Court and that the doctrine of election of remedies and collateral

15

estoppel do not apply.

As to GEM's argument that the JGB award should be vacated because it concerns the overlapping jurisdictional claims of competing unions, the Court is not convinced. GEM signed the competing agreements and is bound by their terms. There is no evidence that the Court's decision will foster labor unrest and cause continued conflict with a competing union. *Teamsters v. Red Ball Motor Freight*, 374 F.2d 932 (5th Cir. 1967), a case cited by GEM in support of its position, is not binding on this Court and is unconvincing.

### III.     CONCLUSION

For the reasons stated, the Court GRANTS Local 67's Motion for Summary Judgment.

**SO ORDERED**.


                                              s/Paul D. Borman  
                                              PAUL D. BORMAN  
                                              UNITED STATES DISTRICT JUDGE

Dated: June 15, 2007


### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on June 15, 2007.

                                              s/Denise Goodine  
                                              Case Manager